IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TRACEY HARPER, #289389          *
              Plaintiff,
        v.                      *  CIVIL ACTION NO. WMN-05-64

PRISON HEALTH SERVICES, INC.    *
CORRECTIONAL MEDICAL SERVICES,
 INC.                           *
DR. BOLAJI ONABAJO
UNNAMED PHYSICIAN               *
UNNAMED PHYSICIAN'S ASSISTANT
              Defendants.       *
                                ***

## MEMORANDUM

### I. Procedural History

Plaintiff is a Maryland Division of Correction inmate.  There is no dispute that he is a 33-

year old male who is 5'11" tall, and, at the time he filed this action, weighed approximately 475

pounds.  He suffers from severe hypertension and morbid obesity.  Plaintiff was shot in the left leg

in 1992 and his gunshot wound was surgically repaired at University of Maryland.  Since that time

an extremely large lymphedema mass, along with a smaller mass, have developed on the inside of

his left thigh.

Plaintiff originally filed this pro se  42 U.S.C. § 1983 civil rights complaint seeking medical

release from prison or court order sending him to another hospital for a second opinion with regard

to the care he received regarding his leg masses.   The court directed health care personnel to file

an emergency show cause response regarding Plaintiff's care and, subsequent to the receipt of that

response, appointed counsel.[1]  Negotiations between counsel and the Department of Public Safety

---

[1]          Based upon a review of the exhibits provided to the court at that time, the undersigned
concluded that Plaintiff's thigh masses, while found not to be malignant, constituted a serious day-to-day

and Correctional Services Assistant Secretary for Treatment Services were unsuccessful and a counseled Amended Complaint was filed on September 9, 2005.  The Amended Complaint seeks injunctive, declaratory, and compensatory relief and addresses the alleged failure by Dr. Onabajo and an unidentified physician and physician's assistant to provide medical treatment and a course of care for the masses on Plaintiff's thigh.  Paper No. 16.  The Amended Complaint further alleges that health care providers have failed to: (1) sufficiently staff the prison infirmary; (2) keep reliable records on Plaintiff; (3) examine Plaintiff's complaints regarding his medical care; and (4) make available medicine to treat Plaintiff's condition and chronic pain.  Paper No. 16.  In addition to the aforementioned Eighth Amendment claims against Dr. Onabajo and the unidentified physician and physician's assistant, the Amended Complaint also incorporates a second count  resting in tort against Defendants Correctional Medical Services, Inc. ("CMS") and Prison Health Care Services, Inc. ("PHS"), for an alleged breach of duty to provide Plaintiff adequate medical care.  *Id*. at 8-9.

## II.  Dispositive Motions

Defendants CMS has filed a Motion and Supplemental Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. Paper Nos. 18 & 25.  Plaintiff has filed Oppositions thereto and CMS has filed Reply pleadings.  Paper Nos. 21, 26, 30 & 31.  PHS has filed a Motion to Dismiss and Plaintiff has filed an Opposition.  Paper No. 23 & 30.  Defendant Onabajo has filed a Motion to Dismiss and Plaintiff has filed an Opposition thereto.  Paper Nos. 23 & 35.  The pleadings shall be ruled on without oral argument.  *See* Local Rule 105.6 (D. Md. 2004).

---

quality-of-life issue and that there was a genuine factual dispute as to the cause of the mass and the need for surgical intervention.

### III.  Standard of Review

### Motion to Dismiss

A court reviewing a complaint in light of a Rule 12(b)(6) motion accepts all well-pled allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff.  *See Ibarra v. United States*, 120 F.3d 472, 473 (4th Cir. 1997).  Such a motion ought not to be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  The court, however, need not accept unsupported legal conclusions or pleaded facts, *see Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), or conclusory factual allegations devoid of any reference to particular acts or practices.  *See United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

### Summary Judgment

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  If there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate.  *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979)*; Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950).  The moving party bears the burden of showing that there is no genuine issue of material fact.  *See* Fed. R. Civ. P. 56(c); *Pulliam*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

Eighth Amendment

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) *citing Wilson v. Seiter*, 501 U.S.294, 297 (1991).   In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that objectively, the prisoner plaintiff was suffering from a serious medical need, and that subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

As noted above, objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care).   Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839– 40.  "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997).   "Actual knowledge or awareness on the part of the alleged inflicter....becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach*

4

*Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995), *quoting Farmer,* 511 U.S. at 844.   If the requisite subjective knowledge is established, an official may avoid liability  "if [he] responded reasonably to the risk, even if the harm was not ultimately averted."[2]  *Farmer*, 511 U.S. at 844.

## IV.  Analysis

The following facts have been culled from affidavits and records presented to the Court. Plaintiff was transferred from the Maryland Reception Diagnostic and Classification Center to the Jessup Pre-Release Unit on February 6, 2003.  That month he began to complain of a mass in his left thigh.  Surgical consultations were performed on March 25, 2003, and August 7, 2003, by the on-site surgeon who recommended elective excision of the left thigh mass.

On October 10, 2003, a consultation was performed at the University of Maryland Medical System ("UMMS") Surgical Clinic.  The UMMS surgeon recommended a Venous Doppler study of Plaintiff's left leg to determine the adequacy of the blood flow to Plaintiff's leg and to assess any signs of deep vein thrombosis (blood clots in the veins).  This test, performed on October 17, 2003, showed normal flow with no signs of thrombosis.   Plaintiff was again seen in the UMMS Surgical Clinic on or about November 4, 2003.  The surgeon felt the mass was most likely a lipoma (benign fatty tumor) or a liposarcoma (malignant tumor), and scheduled Plaintiff for surgery to remove the mass.   Plaintiff was subsequently evaluated by an anaesthesiologist.

On December 16, 2003, Plaintiff underwent a biopsy of the left thigh mass at UMMS.  He was examined postoperatively in the UMMS Surgical Clinic on January 23, 2004, and the results

---

[2]           "[A]ny negligence or malpractice on the part of ....doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference."  *Johnson v. Quinones* 145 F. 3d 164, 166 (4th Cir. 1998).  Without evidence that a doctor linked presence of symptoms with a diagnosis of a serious medical condition, the subjective knowledge required for Eighth Amendment liability is not present.  *Id*. at 169 (actions inconsistent with an effort to hide a serious medical condition refute presence of doctor's subjective knowledge).

of the biopsy showed that the mass, diagnosed as a lymphedema,[3] was benign.  Plaintiff returned to

the UMMS Surgical Clinic on April 9, 2004, for follow-up examination which showed that the

lymphedema was unchanged, large, and indurated (hardened).  The UMMS surgeon, in an apparent

about-face from the November 4, 2003 surgical consult, concluded that surgery for excision of the

mass was not recommended because: (1) the lymphedema would only re-accumulate soon after

excision and (2) surgery was contraindicated because Plaintiff's morbid obesity will "prevent him

to be prone for surgery safely."  The surgeon indicated that there was no need for further follow-up

unless the area became infected.

Plaintiff was transferred to the Maryland Correctional Institution in Jessup ("MCI-J") on

April 17, 2005.  On July 25, 2005, he submitted a sick-call request which in part asked to have his

leg examined.  He did not complain of pain in his leg at that time.  According to the medical record,

Plaintiff arrived for sick-call on July 27, 2005, but left before Dr. Melaku Ayalew ("Ayalew") could

examine him.[4]  On August 17, 2005, Ayalew reviewed Plaintiff's medical records and prepared a

summary, noting the UMMS Surgical Clinic consultation assessment from April of 2005, which

indicated that a surgical follow-up was unnecessary.

On September 10, 2005, Plaintiff complained of pain in his leg and requested that more tests

be done.  Defendant CMS states that when Plaintiff was brought to sick-call, he refused to be seen

by the physician's assistant on September 12 and September 13, 2005.  On September 12, 2005,

Plaintiff was examined by Ayalew, who found that the lymphedema was not reddened and there was

---

[3]       A lymphedema is swelling (especially in subcutaneous tissues) as a result of obstruction of lymphatic vessels or lymph nodes and the accumulation of large amounts of lymph in the affected region. *See* Stedman's Medical Dictionary 1004 (26th ed. 1995).

[4]       Dr. Ayalew has served as the Medical Director for CMS at the MCI-J since July 1, 2005.

no discharge or infection.[5]  According to Ayalew, Plaintiff was educated about his condition, his medications were renewed,[6] and he was scheduled for a follow-up in three months.

In an Opposition response, Plaintiff claims that the masses on his left thigh continue to grow larger and, combined, are the size of a basketball, causing him to be unable to bend his leg.  He further states that the masses are bleeding, scabbed over, and secrete fluid, and that he is unable to stand for extended periods due to his medical condition.[7]  He reasserts his claim that while Defendant Onabajo saw him on numerous occasions, he never developed a plan to treat Plaintiff's condition and never addressed the excruciating pain suffered by Plaintiff.   Plaintiff also maintains that subsequent to his arrival at MCI-J in April of 2005, an unnamed doctor and physician's assistant affirmatively refused to treat his condition.  He claims that inasmuch as prisoners are charged $2.00 per sick-call request, he views submitting encounter slips as pointless.[8]  Finally, Plaintiff claims that existing questions of  fact  concerning the claims raised in the Amended Complaint, *e.g.*, staffing and record maintenance, necessitate that discovery be conducted in this matter under Fed. R. Civ. P. 56(f).

After review of all court pleadings, the Court shall grant Defendants CMS and PHS's Motions to Dismiss with regard to Plaintiff's tort claim against those entities.   Assuming, without deciding, that the Court would exercise its jurisdiction over such a pendant claim, it is clear that the

---

[5]    From July of 2005 to September of 2005, Plaintiff's weight remained constant at 405 pounds.

[6]    There is no showing that Plaintiff was provided any form of pain analgesic in response to his complaints of discomfort.

[7]    Plaintiff claims that because the line to see the medical provider is so long, he sometimes is unable to obtain his blood pressure medication because he cannot stand for long periods of time.

[8]    Plaintiff asserts that CMS has misconstrued the claim against it as he has only asserted a claim of negligence against that entity.

tort claim has not been administratively exhausted before the Maryland Health Claims Arbitration Office as required by the Health Care Malpractice Claims Act ("HCMCA"), Md. Code Ann., Cts. & Jud. Proc. § 3-2A-02.[9]   This arbitration requirement applies to claims of medical negligence filed in federal court.[10]  *See Davison v. Sinai Hospital*, 462 F.Supp. 778, 779 (D. Md. 1978).   Therefore, the tort claims raised against CMS and PHS shall be dismissed for non-compliance with the HCMCA.[11]  *See id.* at 781.

Defendant Onabajo's Motion to Dismiss, however, shall be denied.  The Motion seeks to dismiss the complaint based upon the fact that the negligence claim against PHS in Count II of the Amended Complaint is premised on the medical care provided by Dr. Onabajo.  Defendant argues that as the tort claim against PHS is subject to dismissal for failure to exhaust the HCMCA, the complaint against him should too be dismissed.   The Motion, however, fails to address the fact that Plaintiff has raised a colorable Eighth Amendment complaint against Dr. Onabajo, along with the currently unnamed physician and physician's assistant, for deliberate indifference as to the care for Plaintiff's complaints regarding pain and course of care regarding his leg masses.[12]

_____

[9]       To the extent the Amended Complaint attempts to implicate CMS and PHS in the alleged denial of care solely upon vicarious liability, the law in this circuit is well established that the doctrine of *respondeat superior* does not apply to § 1983 claims.  *See Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 727-28 (4th Cir. 1999); *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982).

[10]       Plaintiff argues that he should be exempt from the arbitration requirement due to his incarceration.  The Court finds this argument unavailing.

[11]       Plaintiff CMS has been the medical care provider for the Department of Public Safety and Correctional Services since July 1, 2005.  Counsel for CMS shall be required to file a report, accompanied by affidavit and record, which provides the status of Plaintiff's medical housing situation, along with his diet and pain medication regimen.  The status report shall also discuss what, if any, course of care has been established to routinely monitor Plaintiff's weight and masses.

[12]       The Court is of the opinion that when initially confronted with Plaintiff's complaints in 2003, healthcare staff were proactive in attempting to diagnose and treat the large mass. The UMMS Clinic diagnosed the condition as a lymphedema and a follow-up consult in April of 2004, deemed surgery of the

IV.  Conclusion

For the aforementioned reasons, the Motions to Dismiss filed by CMS and PHS shall be granted.  The Motion to Dismiss filed by Defendant Onabajo shall be denied.  The Complaint against Defendants Onabajo, an unnamed physician, and an unnamed physician's assistant shall proceed.  Counsel for CMS shall file a status report.  The parties shall inform this court as to wether they have any opposition to the referral of this case to a Magistrate Judge for further proceedings, *e.g.,* discovery, settlement, hearing, and/or trial.[13]

A separate Order follows.


                                                                /s/
Date:  ____9/5/06_____          _____
                                               William M. Nickerson
                                               Senior United States District Judge


---

large mass unnecessary and potentially life-threatening  The limited record presented to the court thus far seemingly shows that since that consult, healthcare personnel are, at best, reactive to Plaintiff's condition. In any event, there is no showing that they have responded to Plaintiff's sick-call requests seeking follow-up care and treatment for pain from the masses.

[13]     The Amended Complaint prays a jury trial.